UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DUGDALE, INC., *Plaintiff/Counter-Defendant*, | )<br>)<br>) |
| vs. | )<br>) |
| ALCATEL-LUCENT USA, INC., *et al.*, *Defendants/Counter-Plaintiffs/Third-Party Plaintiffs*, | )  1:09-cv-0960-JMS-TAB<br>)<br>)<br>) |
| vs. | )<br>) |
| G3 PARTNERS, INC., *Third-Party Defendant*. | )<br>)<br>) |

## ORDER ON ALCATEL'S PARTIAL
## MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Presently before the Court is Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Alcatel-Lucent USA, Inc., Alcatel USA Marketing, Inc., and Alcatel Interworking, Inc.'s (collectively, "Alcatel") Partial Motion for Summary Judgment on Liability. [Dkt. 83.] Through it, Alcatel requests that this Court grant summary judgment on limited portions of Plaintiff Dugdale, Inc.'s ("Dugdale") claims for fraud, constructive fraud, and promissory estoppel.

### I.
### SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).

Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### BACKGROUND

The relevant facts for purposes of this motion, construed in a light most favorable to non-movant Dugdale, are as follows. They are undisputed unless otherwise noted.

This litigation stems from a telecommunications deal gone bad. Alcatel is in the business of manufacturing and selling telecommunications products. [Dkt. 85-2 at 2.] Dugdale is a reseller of telecommunications products and services, which means that it purchases products from telecommunications manufacturers and resells and maintains those products for end-users. [Dkt. 109-3 at 1 ¶ 3.]

Dugdale alleges that Alcatel made false representations to it regarding Alcatel's intention to subcontract maintenance for 50,000 phones on the Advocate Healthcare System ("Advocate System") to Dugdale. Specifically, Dugdale contends that beginning in November 2004, "Alcatel represented several things to Dugdale including that if Dugdale opened and staffed an office in Chicago, Illinois with Alcatel certified technical resources, it would provide Dugdale with a subcontract for maintenance on the entire network of [the Advocate System]." [Dkt. 109-3 at 2 ¶ 5.] Dugdale alleges that Alcatel reiterated and reinforced that representation multiple times between November 2004 and the summer of 2006. [Dkt. 109-3 at 3-7.] Dugdale has designated

notes, agendas, and emails in support of its allegation that Alcatel promised to subcontract maintenance for the Advocate system to it. [Dkt. 109-3 at 14-48.] No written contract of memorandum of understanding exists memorializing any agreement for Alcatel to transfer the Advocate System maintenance work to Dugdale. Alcatel does not deny that it had conversations with Dugdale about possible opportunities regarding the Advocate System, but it disputes that it made "a representation or bona fide promise that [Dugdale] would get this work." [Dkt. 84 at 13-14.]

In January 2005, Dugdale and Alcatel entered into the Business Partner Program Agreement ("BPPA"). [*Id.* at 4 ¶ 18.] Pursuant to the BPPA, Dugdale became Alcatel's "Business Partner" and a non-exclusive reseller of Alcatel products. [Dkt. 85-2 at 2.] The BPPA does not mention the Advocate System. The BPPA contains an integration clause that provides that it "represents the entire agreement between the parties and supersedes all prior written and oral representations." [Dkt. 85-2 at 19.]

Between March and August 2005, Dugdale entered into a four-year lease for office space; leased equipment, furniture, and vehicles; recruited and hired staff; and began operating an office in Chicago. [Dkt. 43 at 4 ¶ 20.] Dugdale alleges that Alcatel represented to it in October 2005 that Dugdale needed to "hash out [various] logistics and be ready to take over [the maintenance for the Advocate System] by January of 2006." [Dkt. 109-3 at 6.] Towards the end of 2005, however, Alcatel told Dugdale that it had put its current contractor, Verizon, on an improvement plan. [Dkt. 109-3 at 6.] Dugdale asserts that Alcatel assured Dugdale that the Verizon improvement plan was just part of the process Alcatel needed to go through to transfer the Advocate System maintenance from Verizon to Dugdale. [Dkt. 109-3 at 6-7.]

In April 2006, Alcatel and Dugdale entered into the Value Added Reseller Agreement ("VARA"). [Dkt. 85-3.] Like the BPPA, the VARA does not mention the Advocate System.

The VARA contains an integration clause that provides that it "constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior oral or written agreements, commitments, quotations, proposals, representations, warranties, or understandings of any nature whatsoever between the parties with respect to the subject matter hereof." [Dkt. 85-3 at 11.]

Sometime during the summer or fall of 2006 the decision was made to bring the maintenance work for the Advocate System in house at Alcatel. [Dkt. 109-1 at 21.] Dugdale ultimately closed its Chicago office. [Dkt. 109-3 at 9 ¶ 10.]

# III.
## DISCUSSION[1]

Alcatel moves for partial summary judgment on the portions of Dugdale's claims for fraud, constructive fraud, and promissory estoppel, to the extent that Dugdale seeks to recover on those claims for alleged misrepresentations regarding Alcatel subcontracting annual maintenance for the Advocate System to Dugdale. [Dkt. 83 at 2.] The parties dispute the applicable law; therefore, the Court will address that issue first.

### A. Choice of Law

The parties dispute whether Indiana or Illinois law applies to the claims at issue. Alcatel argues that Indiana law applies, while Dugdale contends that Illinois law applies.

---

[1] In addition to the arguments addressed below, Alcatel argues that Dugdale's Advocate maintenance claims are "vulnerable to the statute of frauds." [Dkt. 84 at 22.] Pursuant to Federal Rule of Civil Procedure 8(c), a party "must affirmatively state," among other affirmative defenses, the statute of frauds in its responsive pleading. It is undisputed that Alcatel did not assert the statute of frauds in response to Dugdale's operative complaint. Although Alcatel attempted to amend its answer five months after the deadline to amend the pleadings had passed, it was denied leave to do so. [Dkts. 78; 143; 153.] Therefore, the Court will not address Alcatel's arguments (or Dugdale's responses) regarding the statute of frauds, as it was not asserted. [Dkts. 84 at 22-25; 103 at 18-21; 125 at 16-119.]

A federal court sitting in diversity jurisdiction must apply the choice-of-law principles of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice of law rules determine the applicable substantive law."). In Indiana, the choice-of-law analysis involves multiple inquiries. *Calderon v. Melhiser*, 458 F. Supp. 2d 950, 952 (S.D. Ind. 2006). First, the Court must determine whether there is a true conflict—that is, are there differences between the laws of the states that are "important enough to affect the outcome of the litigation?" *Id.* (quoting *Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004)). If there is a true conflict, there is a presumption that the *lex loci delicti* rule applies and the Court will, therefore, apply the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Calderon*, 458 F. Supp. 2d at 952. This presumption may be overcome only if the Court determines that the place of the tort bears little connection to the legal action at issue. *Simon*, 805 N.E.2d at 805.

In its opening brief, Alcatel assumes that Indiana law applies and does not undertake a choice-of-law analysis. In response, Dugdale engages in a cursory two-paragraph choice-of-law analysis and concludes that Illinois law applies to the claims at issue because "the most intimate contacts" were with Illinois. [Dkt. 103 at 7.] That claim stands in tension with Dugdale's previous assertions in favor of transferring Alcatel's action against it from the Central District of California to this District, in part, because Dugdale's headquarters is located in Indiana and "the majority" of the meetings related to the formation of the business relationship took place in Indiana. [Dkt. 126-1.]

In any event, Dugdale ignores the first step of Indiana choice-of-law analysis by not attempting to determine whether a true conflict exists between the laws of Indiana and Illinois that

is important enough to affect the outcome of the litigation. Because Dugdale does not engage in the first step of Indiana's choice-of-law analysis, the Court concludes that it failed to make a cogent argument in support of the application of Illinois law. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."); *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005) (same). Therefore, the Court will apply Indiana law. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) (holding that the law of the forum state applies if no party raises a choice of law issue in a diversity case).

Even if the Court were to look past Dugdale's waiver, it still wouldn't matter. Although nuanced differences may exist in the terminology used by courts in Indiana and Illinois adjudicating fraud, constructive fraud, and promissory estoppel claims, a "true conflict" does not exist that would affect the outcome of this litigation. As detailed below, Alcatel is entitled to summary judgment on Dugdale's fraud claim to the extent it seeks to recover for representations regarding the Advocate System because, under either Indiana or Illinois law, Dugdale cannot rely on representations regarding future conduct to recover under a theory of fraud. *See Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000) ("Under Indiana law . . . [a]ctual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed."); *Ochoa v. Maloney*, 69 Ill. App. 3d 689, 695 (Ill. Ct. App. 1979) ("In Illinois, it is established that . . . [a] fraudulent misrepresentation which induced a person to action must be based upon a present or past fact and cannot rest upon a false promise to do something in the future even though accompanied by an intention not to perform.").

Alcatel is also entitled to summary judgment on Dugdale's constructive fraud claim to the extent it seeks to recover for representations regarding the Advocate System because, under either Indiana or Illinois law, a special relationship between the parties must exist that gives rise to the existence of a duty. *Doe*, 227 F.3d at 991 (listing the elements of a claim for constructive fraud under Indiana law, including, "a duty existing by virtue of the relationship between the parties"); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1188 (7th Cir. 1996) ("Under Illinois law, a breach of duty, especially fiduciary duty, is an essential element of a claim of constructive fraud."). For the reasons detailed below, no such relationship existed between Alcatel and Dugdale.

Alcatel is not, however, entitled to summary judgment on Dugdale's promissory estoppel claim to the extent it seeks to recover for representations regarding the Advocate System. Both Indiana and Illinois require the plaintiff to prove that it reasonably relied on the promise made by the promissor. *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007) (holding that a party asserting promissory estoppel must establish, among other things, that it reasonably relied on the promise by the promissor); *Quake Constr., Inc. v. Am. Airlines, Inc.*, 585 N.E.2d 990, 1005 (Ill. 1990) ("Plaintiff's reliance must be reasonable and justifiable.")). Because the Court concludes that an issue of material fact exists regarding the reasonableness of Dugdale's reliance on Alcatel's promises involving the Advocate Maintenance system, Alcatel would not be entitled to summary judgment on Dugdale's promissory estoppel claim under either Indiana or Illinois law.

For these reasons, the Court concludes that, even if Dugdale did not waive its argument that Illinois law applies, a true conflict important enough to affect the outcome of the litigation does not exist on the claims at issue herein. Therefore, the Court applies Indiana law. *Jean v.*

*Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) (holding that "the law of the forum state applies" if there is no conflict between the laws of the states).

**B. Fraud**

Alcatel seeks summary judgment on Dugdale's fraud claim to the extent it is based on Alcatel's alleged misrepresentations regarding its intention to transfer maintenance for the Advocate System to Dugdale. Specifically, Alcatel argues that these allegations, even if true, do not support a claim for fraud because actual fraud cannot be based on representations regarding future conduct or broken promises.

To prove a fraud claim under Indiana law, a plaintiff must demonstrate (1) a material misrepresentation of past or existing fact, (2) that was untrue, (3) that was made with knowledge of or in reckless ignorance of its falsity, (4) that was made with the intent to deceive, (5) that was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of. *Doe*, 227 F.3d 981. "[F]raud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Id.* Although a statement of present intention or state of mind will support a claim of actual fraud in some jurisdictions, Indiana has explicitly rejected that rule. *Peoples Trust Bank v. Braun*, 443 N.E.2d 875, 877-79 (Ind. Ct. App. 1983); *see also Mudd v. Ford Motor Co.*, 178 Fed. Appx. 545, 547 (7th Cir. 2006).

The Court agrees with Alcatel that Dugdale's claim for fraud, to the extent it is based on alleged misrepresentations regarding Alcatel's intent to subcontract maintenance for the Advocate System to Dugdale, cannot survive summary judgment. Dugdale seeks to recover for fraud because "Alcatel represented several things to Dugdale including that if Dugdale opened and staffed an office in Chicago, Illinois with Alcatel certified technical resources, it would provide

- 8 -

Dugdale with a subcontract for maintenance on the entire network of [the Advocate System]." [Dkt. 109-3 at 2 ¶ 5.] These representations are undisputedly statements of future intention that, although ultimately unfulfilled, cannot serve as a basis for fraud.[2] Therefore, the Court grants Alcatel's request for summary judgment to the extent that Dugdale cannot recover for fraud on its allegations that Alcatel represented that it would subcontract annual system maintenance for the Advocate System to Dugdale.

### C. Constructive Fraud

Alcatel also seeks summary judgment on Dugdale's constructive fraud claim to the extent it is based on Alcatel's alleged misrepresentations regarding its intention to transfer maintenance for the Advocate System to Dugdale. Alcatel primarily argues that Dugdale's constructive fraud claim fails because of a lack of a special relationship between the parties.

Representations regarding future conduct may, in some situations, give rise to a constructive fraud claim. *Yeager v. McManama*, 874 N.E.2d 629, 637 (Ind. Ct. App. 2007). It is "well established that a fiduciary or other special relationship must exist in order to support a constructive fraud action." *Epperly v. Johnson*, 734 N.E.2d 1066, 1074 (Ind. Ct. App. 2000). A confidential or fiduciary relationship exists when confidence is reposed by one party in another "with resulting superiority and influence exercised by the other." *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 914 (Ind. App. 1999). For purposes of constructive fraud, "[a] fiduciary relationship

---

[2] Dugdale makes a passing reference to alleged misrepresentations Alcatel made regarding the term of its maintenance subcontract with Verizon and argues that "those terms were already in place[; t]hus, Alcatel's representations were regarding past and existing facts." [Dkt. 103 at 10.] In its Amended Complaint, however, Dugdale does not reference any misrepresentations regarding Verizon. [Dkt. 43.] Federal Rule of Civil Procedure 9(b) requires fraud to be pled with particularity; therefore, Dugdale cannot recover for any alleged misrepresentations regarding the length of the Verizon subcontract. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (describing Rule 9(b)'s particularity requirement as "the who, what, when, where, and how: the first paragraph of any newspaper story").

may not be premised on an arms length transaction resulting in the formation of a contract." *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind. Ct. App. 2004); *see also Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 164 (Ind. 2005) (Boehm, J., concurring) (parties "engaged in an ordinary arms length business transaction" have "no special relationship" for purposes of constructive fraud).

Alcatel and Dugdale did not have the type of relationship necessary for Dugdale to succeed on a claim for constructive fraud. Dugdale has never alleged that the parties' business dealings were anything other than arms' length business transactions. These business transactions resulted in two contracts—the BPPA and the VARA. Dugdale has made its position clear that the alleged misrepresentations regarding the Advocate System caused it to enter into the BPPA and the VARA. [Dkt. 103 at 16 ("Dugdale is claiming that Alcatel misrepresented that it would provide Dugdale with Advocate Maintenance and, based upon those misrepresentations, *inter alia*, Dugdale entered into the [BPPA and the VARA].").] Construing the evidence in favor of Dugdale as the Court is required to on summary judgment, Alcatel and Dugdale did not have the type of relationship necessary for Dugdale to sustain a constructive fraud claim on its allegations regarding the Advocate System. Therefore, Alcatel is entitled to summary judgment on this portion of Dugdale's claim.

### D. Promissory Estoppel

Alcatel seeks summary judgment on Dugdale's promissory estoppel claim to the extent it is based on Alcatel's alleged misrepresentations regarding its intention to transfer maintenance for the Advocate System to Dugdale. Alcatel primarily argues that Dugdale's promissory estoppel claim fails because Dugdale could not have reasonably relied on any representations regarding a subcontract for maintenance on the Advocate System.

Promissory estoppel makes a promise that induces reasonable reliance legally enforceable. *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 702 (7th Cir. 2004). The doctrine permits appropriate recovery where no contract in fact exists. *Ind. BMV v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008). A person may say something that he intends as merely a prediction, or as a signal of his hopes or intentions, but if it is reasonably understood as a promise, he is bound by the doctrine of promissory estoppel. *Garwood*, 378 F.3d at 704.

A party asserting promissory estoppel must establish five elements: (1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise. *Biddle*, 860 N.E.2d at 581.

Alcatel contests whether Dugdale has evidence regarding the third element of promissory estoppel—reasonable reliance—sufficient to survive summary judgment. What constitutes a reasonable understanding will often depend on the knowledge that the promisee brings to the table. *Garwood*, 378 F.3d at 704. The essence of the doctrine of promissory estoppel "is not that the plaintiff have reasonably relied on the defendant's promise, but that he have reasonably relied on its being a promise in the sense of a legal commitment, and not a mere prediction or aspiration or bit of puffery." *Id.* Ordinarily the question of whether a plaintiff reasonably understood a statement to be a promise is a question of fact and so cannot be resolved in summary judgment proceedings. *Id.* at 705.

Dugdale and Alcatel dispute whether it was reasonable for Dugdale to rely on Alcatel's representations regarding a future subcontract for the Advocate System as a legally enforceable promise. Alcatel argues that it was not reasonable for Dugdale to rely on any representations regarding a subcontract for maintenance on the Advocate System because the BPPA does not

mention the Advocate System maintenance and contains an integration clause that provides that it "represents the entire agreement between the parties and supersedes all prior written and oral representations." [Dkt. 85-2 at 19.] Alcatel also emphasizes that Dugdale and its Chairman, William Dugdale, are "sophisticated and experienced in business" and knew not to rely on oral representations for a deal as big as maintenance on the Advocate System. [Dkt. 84 at 14 (citing dkt. 85-4 at 18 (Mr. Dugdale's testimony that he had "been in the phone business for . . . 20-some-odd-years").] While Alcatel acknowledges that some of Mr. Dugdale's notes and other written documents reference the Advocate System, "there is nothing in writing anywhere demonstrating a representation or a bona fide promise that [Dugdale] would get the work." [Dkt. 84 at 14.]

Dugdale argues that the integration clauses in the BPPA and the VARA do not preclude its reliance on Alcatel's representations because those contracts are unrelated to Advocate Maintenance and, therefore, irrelevant. [Dkt. 103 at 13.] Dugdale argues that the reasonableness of its reliance is based upon the multiple representations and benchmarks Alcatel set for Dugdale regarding its intention to subcontract maintenance for the Advocate System to Dugdale. [Dkt. 103 at 11.] Dugdale contends that Alcatel made and reinforced representations regarding a subcontract for the Advocate System on at least fifteen occasions from November 2004 to March 2006. [Dkt. 109-3 at 2-7.] Angie Witham, the former CEO of Dugdale, attests that on multiple occasions in 2005, Chris Cirko, the Regional Director, "represented to Dugdale that Alcatel would transfer Advocate Maintenance to Dugdale at the end of Verizon's one year interim term that ended September 30, 2005." [Dkts. 131 at 3; 109-6 at 2.] Don Trace, an Alcatel employee involved in the discussions surrounding the Advocate System, testified that internally "[t]he word 'commit' was made or used. 'We committed to them,' meaning Dugdale. 'We promised

Dugdale.' We created the expectation with Dugdale. We -- in conversational tone, lots of words were used to demonstrate a certain level of seriousness about why they were going to move and open an office with no revenue in Chicago." [Dkt. 109-1 at 11.] Additionally, Dugdale emphasizes that Michael Varone, an Alcatel project manager overseeing Advocate System sites, referred various employees to Dugdale to hire because he wanted to utilize their services and "they had a skill set and they had an experience level on our product that I wanted." [Dkt. 109-2 at 8, 11.] And Alcatel had Dugdale present updates on its "ramp up for Advocate Maintenance" in late 2005. [Dkt. 109-3 at 6.] Even after Verizon was put on an improvement plan, Dugdale claims that it was reassured that "it is just part of the process Alcatel needed to go through to transfer Advocate Maintenance from Verizon to Dugdale." [Dkt. 109-3 at 7.]

The Court disagrees with Alcatel that the integration clauses in the BPPA and the VARA preclude Dugdale from recovering on the claims surrounding the alleged misrepresentations of the Advocate System subcontract. The BPPA and the VARA were agreements for Dugdale to become a non-exclusive reseller of Alcatel products. [Dkts. 109-10 at 1; 109-11 at 1.] The potential subcontract for Advocate System, however, was for Dugdale to do maintenance on the entire Advocate network, which constituted approximately 50,000 phones. [Dkt. 109-3 at 2.] Because the subject matter of these reseller business dealings is distinct from the Advocate System maintenance, the Court agrees with Dugdale that the integration clauses do not preclude Dugdale's reasonable reliance as a matter of law.

Instead, the Court concludes that a genuine issue of material fact exists regarding the reasonability of Dugdale's reliance on Alcatel's representations being a promise in the sense of a legal commitment, not a mere aspiration. Mr. Trace's testimony shows that internally, Alcatel thought that it had "promised Dugdale" and "committed to them" regarding the Advocate Sys-

tem. [Dkt. 109-1 at 11.] Additionally, Dugdale has designated evidence of extended negotiations and repeated reassurances Alcatel made to it regarding its intention to subcontract maintenance for the Advocate System to Dugdale. [Dkts. 109-3 at 2-7; 109-5 at 2-4.] These factors are sufficient to create an issue of material fact regarding the reasonableness of Dugdale's reliance. *See Frey v. Workhorse Custom Chassis, LLC,* 2006 U.S. Dist. LEXIS 41846, *32 (S.D. Ind. 2006) (holding that defendant's admission that he expected plaintiff to rely on his promises, along with evidence of extended negotiations sufficient to assure plaintiff that defendant would follow through on the non-contractual promise, was sufficient to present a question of fact as to reasonable reliance). The evidence that Dugdale designated regarding Alcatel's Advocate project manager referring certain employees to Dugdale who "had the skill set" and who he "wanted" to work only with strengthens this conclusion.

For these reasons, the Court denies Alcatel's request for summary judgment on Dugdale's promissory estoppel claim, to the extent that claim relies on representations Alcatel made regarding its intention to subcontract annual system maintenance for the Advocate System to Dugdale.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Alcatel's Partial Motion from Summary Judgment on Liability. [Dkt. 83.] Alcatel's request for summary judgment on Dugdale's claims for fraud and constructive fraud is granted to the extent those claims are based on allegations that Alcatel represented it would subcontract annual system maintenance for the Advocate System to Dugdale. Alcatel's request for summary judgment on Dugdale's claim for promissory estoppel is denied.

05/12/2011

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Louis F. Bonacorsi
BRYAN CAVE LLP
lfbonacorsi@bryancave.com

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
jboyers@woodmclaw.com

Raegan Mackenzie Gibson
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
rgibson@beneschlaw.com

Douglas B. King
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Stephen R. Snodgrass
BRYAN CAVE LLP
srsnodgrass@bryancave.com

Mark R. Waterfill
BENESCH, FRIEDLANDER, COPLAN, & ARONOFF, LLP
mwaterfill@beneschlaw.com

Scott A. Weathers
THE WEATHERS LAW OFFICE
scott@sawlaw.net

Jamie A. Young
WOODEN & MCLAUGHLIN LLP
jyoung@woodmaclaw.com