UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DUGDALE, INC., <br>    *Plaintiff/Counter-Defendant*, <br><br> *vs.* <br><br> ALCATEL-LUCENT USA, INC., *et al.*, <br>    *Defendants/Counter-Plaintiffs/Third-* <br>    *Party Plaintiffs*, <br><br> *vs.* <br><br> G3 PARTNERS, INC., <br>    *Third-Party Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 1:09-cv-0960-JMS-TAB |

**ORDER ON ALCATEL'S PARTIAL**
**MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

Presently before the Court is Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Alcatel-Lucent USA, Inc., Alcatel USA Marketing, Inc., and Alcatel Interworking, Inc.'s (collectively, "<u>Alcatel</u>") Partial Motion for Summary Judgment on Damages. [Dkt. 79.] Through it, Alcatel requests that this Court grant summary judgment against Plaintiff Dugdale, Inc. ("<u>Dugdale</u>") on certain types of damages Dugdale seeks in this action.

**I.**
**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).

Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### BACKGROUND

The Court has issued three orders on the parties' various summary judgment motions. [Dkts. 175; 194; 195.] Prior familiarity with those opinions is assumed; therefore, the Court will present an abbreviated summary of the underlying facts relevant to the instant motion.

This litigation stems from a telecommunications deal gone bad. Alcatel manufactures and sells telecommunications products, and Dugdale is a reseller of telecommunications products and services. Dugdale alleges that Alcatel made false promises to it regarding Alcatel's intention to subcontract maintenance for 50,000 phones on the Advocate Healthcare System ("Advocate System") to Dugdale.

Dugdale and Alcatel entered into the Business Partner Program Agreement ("BPPA") in January 2005 and, pursuant to that contract, Dugdale became a non-exclusive reseller of Alcatel products. The BPPA does not mention the Advocate System. Alcatel and Dugdale entered into the Value Added Reseller Agreement ("VARA") in April 2006. The VARA does not mention the Advocate System. Dugdale alleges that Alcatel provided defective telecommunications products to it under both the BPPA and the VARA despite representations made as to the products quality.

No written contract or memorandum of understanding exists memorializing any agreement for Alcatel to transfer to Advocate System maintenance work to Dugdale. Alcatel never transferred the Advocate System maintenance work to Dugdale and, instead, brought that work in house to Alcatel in the fall of 2006 after Dugdale had opened a Chicago office.

## III.
### DISCUSSION

#### A. Page Limits on Summary Judgment

As an initial matter, the Court notes that Alcatel filed this summary judgment motion contesting Dugdale's damages (with a thirty-five-page supporting memorandum) the same day it filed a summary judgment motion contesting its liability on Dugdale's claims (with a twenty-seven-page supporting memorandum). [Dkts. 79; 83.] The local rules provide that, "[e]xcept by permission of the court, no brief or response may exceed 35 pages in length . . . ." L.R. 7.1(c).

The Court directs Alcatel to the recently amended Uniform Case Management Plan, which emphasizes that "[a]bsent leave of court, and for good cause shown, all issues raised on summary judgment under Fed. R. Civ. P. 56 must be raised by a party in a single motion." Uniform Case Management Plan at 6, *available at* www.insd.uscourts.gov (Forms and Publications --- Forms --- Uniform Case Management Plans) (last visited June 3, 2011). The Court will not penalize Alcatel because the revised language limiting a party to a single summary judgment motion was not contained in the parties' case management plan; however, in the future, Alcatel and/or its counsel should file a single summary judgment motion within the requisite page limits or seek leave of Court to do otherwise.

#### B. Expert Testimony in Response to Summary Judgment

In response to the instant summary judgment motion, Dugdale designated expert affidavits from George Cassiere and Jeffrey Mullen. [Dkts. 112-2; 112-15.] Alcatel asks the Court to

strike these affidavits because Dugdale did not disclose this testimony sixty days before the summary judgment deadline, as Alcatel contends Dugdale was required to do by the parties' case management plan. [Dkt. 144 at 2-3.]

The dispositive motions deadline in this case was December 13, 2010. [Dkt. 58 at 1.] The parties' case management plan provides that if the parties "use expert witness testimony at the summary judgment stage, such disclosures must be made no later than sixty (60) days prior to the summary judgment deadline." [*Id.*] Instead of disclosing Mr. Cassiere and Mr. Mullen's testimony sixty days before the dispositive motions deadline, Dugdale disclosed the testimony on the expert disclosure deadline—January 7, 2011. [*Id.*] It then relied on that testimony in response to Alcatel's summary judgment motion, which it filed January 20, 2011. [Dkt. 111.]

The Court notes that while Dugdale disclosed its expert testimony by the expert disclosure deadline, it is not wholly without fault. Despite Alcatel's numerous requests for damages calculations during discovery, [*see, e.g.*, dkt. 112-1], Dugdale continued to rely on "draft" calculations until April 2011 when it produced its second supplemental response to Alcatel's damages interrogatories, [dkt. 163-3; *see, e.g.*, dkts. 112-1 at 1-2 (Dugdale's November 2010 response to interrogatories disclaiming that it "is in the process of conducting discovery on damages"); 81-4 at 17 (William Dugdale's testimony in December 2010 that "[l]et me reiterate that the formulas I've come up with [for damages] are still in draft form . . .")]. While Alcatel does not dispute that Dugdale produced its expert disclosures by the disclosure deadline, Dugdale's repeated delay in responding to Alcatel's damages discovery with tentative figures is disappointing. Alcatel never filed a motion to compel, however, and this Court will not retroactively penalize Dugdale.

The Court does not agree with Alcatel that the parties' case management plan required Dugdale to disclose the experts it used in response to Alcatel's summary judgment motion sixty

days before the dispositive motions deadline. Alcatel failed to provide Dugdale notice that it planned to move for summary judgment on damages. [Dkt. 148 at 3.] While the Court recognizes that *McCauley v. Nucor Corp.*, 2007 U.S. Dist. LEXIS 9688 at *3-*4 (S.D. Ind. 2007), supports Alcatel's argument, the Court believes it is typically unworkable to require the non-moving party to anticipate the grounds on which its opponent may move for summary judgment and whether it will utilize expert testimony in response to the motion. The expert disclosure deadline occurs after the dispositive motions deadline in a typical case management plan, and if a party does not anticipate using expert testimony to move for summary judgment, it should not be required to disclose expert testimony sixty days prior to the dispositive motion deadline. While an astute non-moving party may be able to anticipate the grounds on which its opponent may move for summary judgment and which of those grounds may require expert testimony in response, the non-moving party cannot definitely know those grounds until it sees the moving party's summary judgment motion, unless it is given advance notice by the moving party. It is undisputed that Alcatel failed to give such notice in this case.

Moreover, even if the Court agreed with Alcatel and struck the testimony of Mr. Cassiere and Mr. Mullen, *McCauley* limits its holding to the summary judgment proceeding and has "no bearing on the ultimate admissibility of these experts' testimony at trial." 2007 U.S. Dist. LEXIS 9688 at *6 n.2. Therefore, even if the Court were to follow that decision as Alcatel advocates, Dugdale could introduce the challenged testimony at trial. Ultimately, the Court did not rely on the testimony of Mr. Cassiere or Mr. Mullen to rule on this motion because, for reasons detailed below, it concludes that Dugdale cannot recover lost profits or lost opportunity costs on its remaining claims as a matter of law. Therefore, Alcatel's request to strike that testimony on summary judgment is denied.

## C. Addressing Alcatel's Motion

Dugdale's claims against Alcatel are brought under several legal theories but are divided into two factual categories—1) claims based on Alcatel's failure to subcontract maintenance for the Advocate System to Dugdale, and 2) claims based on allegedly defective products Alcatel provided to Dugdale.

Alcatel argues that it is entitled to summary judgment on five types of damages Dugdale seeks on its various claims. Specifically, Alcatel asserts that Dugdale cannot recover damages as a matter of law for 1) amounts above the purchase price of products it alleges are defective under the BPPA or the VARA; 2) lost profits; 3) lost opportunities; 4) prejudgment interest on alleged lost profits and lost opportunities; and 5) punitive damages.[1]

Although Alcatel addresses the various types of damages Dugdale seeks and asks the Court to grant summary judgment on those categories of damages, categories of damages do not exist in a vacuum and, instead, are directly tied to the specific claims a party asserts. The law allows for certain types of damages for each claim and, in addition, parties sometimes prescribe limits on damages in relevant contractual terms. Therefore, to effectively address Alcatel's arguments, and with an eye toward potential jury instructions at the upcoming trial, the Court will address each of Dugdale's claims and the related potential recovery.

---

[1] Dugdale responds to Alcatel's motion "under Illinois law" with no argument why Illinois law applies. [Dkt. 111.] To the extent Dugdale implicitly reasserts the brief choice-of-law argument it presented in response to Alcatel's summary judgment on liability, the Court has already addressed that issue and concluded that Indiana law applies. [Dkt. 195 at 4-8.] Therefore, the Court will apply Indiana law, unless the parties' contracts require otherwise.

### D. Dugdale's Claims

#### 1. Promissory Estoppel (Count I)

Promissory estoppel is the only remaining claim Dugdale asserts regarding Alcatel's alleged misrepresentations regarding its intention to subcontract maintenance for the Advocate System to Dugdale.[2]

Promissory estoppel is a quasi-contractual remedy that permits recovery where no contract exists.[3] *Ind. BMV v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008). The factfinder will be instructed that if Dugdale proves, by the greater weight of the evidence, that 1) Alcatel made a definite and substantial promise, expecting Dugdale to rely on it; 2) Dugdale reasonably relied on Alcatel's promise; 3) Dugdale was harmed as a result; and 4) fairness requires that Alcatel's promise be enforced; then Alcatel is bound by that promise. Ind. Model Jury Inst. 3321 (promissory estoppel).

The scope of relief available through a promissory estoppel claim is limited to restitution or to damages based on the scope of reliance. *Frey v. Workhorse Custom Chassis, LLC*, 2006 U.S. Dist. LEXIS 41846, *31 (S.D. Ind. 2006) (citing *Jarboe v. Landmark Community Newspaper of Indiana, Inc.*, 644 N.E.2d 188, 122 (Ind. 1995)). While a plaintiff may be able to recover out-of-pocket expenses, expectation damages are not recoverable on this theory. *Frey*, 2006 U.S. Dist. LEXIS 41846 at *32. Promissory estoppel does not support lost-profits damages, and the proper remedy is the amount necessary to restore the injured party to the position it would have

---

[2] Dugdale asserted claims for fraud and constructive fraud based on Alcatel's alleged misrepresentations regarding the Advocate System, but the Court granted summary judgment on those claims. [Dkt. 195.]

[3] Dugdale is not asserting a promissory estoppel claim for the defective products because those claims stem from the BPPA and the VARA contracts, and promissory estoppel permits recovery where no contract exists. *Ash, Inc.*, 895 N.E.2d at 367.

occupied had the promise not been made. *Creative Demos v. Wal-Mart Stores*, 142 F.3d 367, 369 (7th Cir. 1998).

Dugdale acknowledges that it cannot recover lost profits or lost opportunity costs on a promissory estoppel claim in its Amended Complaint. [Dkt. 43 at 8 (damages requested for promissory estoppel claim limited to "reimbursing Dugdale for the costs and expenses it incurred in conjunction with Alcatel's unfulfilled promises").]

The parties do not address Dugdale's general request for punitive damages in the context of the promissory estoppel claim; however, promissory estoppel is a "quasi-contract theory [that] does no better as a foundation for a punitive award, for in Indiana there are no exceptions to the rule that punitive damages may not be awarded in contract actions." *Creative Demos*, 142 F.3d at 369 (finding the district court's decision to reverse the jury's award of punitive damages to be "sound"); *see Creative Demos v. Wal-Mart Stores*, 955 F. Supp. 1032, 1043 (S.D. Ind. 1997) ("Under Indiana law promissory estoppel claims cannot serve as the basis for punitive damages awards."), *rev'd on other grounds*. Therefore, Dugdale cannot recover punitive damages on its promissory estoppel claim.

### 2. Fraud (Count II)

In response to various arguments Alcatel makes on summary judgment, Dugdale asserts that the BPPA and the VARA "were induced by fraud."[4] [Dkt. 111 at 15.] Specifically, Dugdale contends that Alcatel misrepresented the reliability of its products and that Dugdale relied upon these misrepresentations in entering into the BPPA and the VARA. [Dkt. 111 at 15.] To the extent that Dugdale alleges a fraud claim on the defective products allegations under the BPPA or

---

[4] While Dugdale asserts a claim for "fraud" in its Amended Complaint instead of "fraudulent inducement," the essential elements of fraudulent inducement are "no different from any action on fraud." *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004).

the VARA, that claim would be in addition to the breach of contract claim Dugdale asserts regarding the defective products.

### a. Damages Generally Recoverable for Fraud

A party may plead as many separate claims as it has, regardless of consistency. Fed. R. Civ. Pro. 8(d)(3). For Dugdale to successfully pursue claims for both breach of contract and fraud regarding the contract, however, it must prove that Alcatel committed a separate and independent tort of fraud and that the fraud resulted in injury distinct from that resulting from the breach. *Martin Marietta Materials, Inc. v. BDC/Cardinal Assocs., LP*, 2007 U.S. Dist. LEXIS 49382, *13-*14 (S.D. Ind. 2007) (citing *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000)). In other words, in addition to the five elements of fraud, Dugdale must establish that the alleged fraud "resulted in an injury different from that resulting from the alleged breach of contract." *Id.*

Dugdale's fraud claim for the defective products alleges that Alcatel represented to it that the phone system was "tested and ready for use" even though it "knew those representations were false and the phone system was defective." [Dkt. 43 at 6.] This is the only allegation in Dugdale's Amended Complaint that specifically states an allegedly fraudulent misrepresentation sufficient to plead an independent fraud claim pursuant to Federal Rule of Civil Procedure Rule 9(b). However, Dugdale designates no evidence that this alleged fraud resulted in an injury different from the injury Dugdale sustained from the alleged breach of contract. Specifically, the gravamen of both Dugdale's breach of contract and fraud claims is that Alcatel knew its products were defective and still provided them to Dugdale. Dugdale has not established that the alleged fraud resulted in an injury different from the injury resulting from the alleged breach of contract; therefore, it cannot pursue an independent fraud claim.

While this may spell doom for Dugdale's fraud claim at trial, Alcatel has not moved for summary judgment on the fraud claim based on the defective products. Moreover, the evidence at trial may support an injury distinct from the injury resulting from the alleged breach of contract.

### b. Contractual Limitations

Even if Dugdale presents evidence at trial that it suffered a different injury sufficient to support an independent fraud claim, such injury would be governed by the contractual limitations on damages in the BPPA and the VARA.

"Courts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties."[5] *Trimble v. Ameritech Publ'g*, 700 N.E.2d 1128, 1129 (Ind. 2000). It is in the best interest of the public not to unnecessarily restrict the freedom to contract. *Id.* Contracts containing clauses that limit liability to an amount equal to or lesser than the contract price or the sum of money actually paid to further the contract are enforceable. *Id.*

The BPPA and the VARA expressly limit liability on tort claims. [Dkts. 81-1 at 16 § 12.1(iii) (BPPA provision limiting liability "however arising, whether for breach of this agreement . . . or in tort"); 81-2 at 8 § 19.1 (VARA provision limiting liability "regardless of the

---

[5] The Court notes that Illinois, California, and Texas also support the freedom to contract and allocate risk. *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) ("Texas strongly favors parties' freedom of contract" and parties of "competent understanding have the utmost liberty of contracting[.]"); *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1044 (C.D. Cal. 2008) ("But there is no doubt that humans have the freedom of choice to bind themselves in mutually advantageous contractual relationships. When Plaintiff chose to enter the [contract] with Defendant he agreed, among other things, to limit Defendant's liability…. Plaintiff is bound by the terms of that contract."); *Jewelers Mut. Ins. Co. v. Firstar Bank Ill.*, 792 N.E.2d 1, 10 (Ill. App. Ct. 2003) (holding that the basis for enforcing contractual provisions limiting liability "is the strong public policy favoring freedom of contract" and "a widespread policy of permitting competent parties to contractually allocate business risks as they see fit").

form or cause of action whether in contract or in tort or the number of claims . . .").] Dugdale does not challenge Alcatel's interpretation of these provisions or argue that they are ambiguous or unenforceable.

Significantly, despite claiming fraudulent inducement, Dugdale has chosen to affirm the BPPA and the VARA instead of to rescind those contracts. *See Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 676 (7th Cir. 2007) ("A fraudulent inducement claim generally requires an election of remedies: either affirm the contract, retain the benefits, and seek damages, or rescind the contract, return the benefits, and seek restitution (reimbursement for expenses incurred as a result of the fraud)."). Dugdale has affirmed both contracts by pursing breach of contract damages for allegedly defective products provided under those contracts. [Dkt. 43 at 10-11 (referencing both BPPA and VARA to support breach of contract claim).] Additionally, Dugdale affirmed the BPPA by (successfully) pursuing summary judgment on Alcatel's claim for non-payment by relying on the statute of limitations contained in the BPPA to get a declaration that Alcatel could not recover $344,552.17 of damages stemming from purchase orders made under the BPPA. [Dkt. 194.]

Dugdale cannot enforce certain provisions of the contract while ignoring others. *See Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 416 (Ind. Ct. App. 2008) ("[P]artial rescission is not an option for a party alleging fraud."). Therefore, Dugdale is bound by the terms of the contracts it entered into with Alcatel. To the extent Dugdale has a claim for fraud against Alcatel that is distinct from its breach of contract claim, Dugdale's recovery is capped by the limitations on liability contained in the BPPA and the VARA.

### c. Punitive Damages on Fraud Claim

Alcatel contends that Dugdale must prove an independent tort to recover punitive damages. [Dkt. 80 at 27.] Alcatel emphasizes that "there is no competent evidence [that it had] a quasi-criminal state of mind" to support an award of punitive damages. [*Id.* at 34.]

The purpose of punitive damages is not to make the plaintiff whole or to attempt to value the injuries of the plaintiff. *Cheatham v. Pohle*, 789 N.E.2d 467, 471 (Ind. 2003). Rather, punitive damages have historically been designed to deter and punish wrongful activity and, as such, they are quasi-criminal in nature. *Id.* Tortious conduct involving "malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact of law, honest error or judgment, overzealousness, mere negligence, or other human failing" may be punished by an award of punitive damages. *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 354 (7th Cir. 2004). Thus, contrary to Alcatel's argument, fraud is the type of claim for which punitive damages can be awarded.

However, the parties' agreements must also be considered. The Court notes that the BPPA expressly disclaims recovery for punitive damages. [Dkt. 81-1 at 16 § 12.1(iii).] Therefore, Dugdale cannot recover punitive damages on the products purchased under the BPPA by the unambiguous terms of that contract, which Dugdale do not dispute.

The VARA's contractual limitation of liability does not expressly disclaim punitive damages. Therefore, to the extent Dugdale can prove an independent claim for fraud under the VARA, it is possible that it can recover punitive damages. But even if Dugdale can prove fraud and recover punitive damages for defective products provided under the VARA, that contract expressly limits Alcatel's liability to "actual, direct, provable damages, not to exceed the purchase price of the product that are the subject of such claim." [Dkt. 81-2 at 8 § 19.1.] Therefore, while

Dugdale may be able to recover punitive damages under the VARA, the factfinder cannot award more than the purchase price of the products at issue for any claim under that contract.

### 3. Constructive Fraud (Count III)

To prove a claim for constructive fraud, it is "well established that a fiduciary or other special relationship must exist." *Epperly v. Johnson*, 734 N.E.2d 1066, 1074 (Ind. Ct. App. 2000). The Court already held that Alcatel and Dugdale did not have the type of relationship necessary for Dugdale to sustain a constructive fraud claim against Alcatel. [Dkt. 195 at 9-10.] Having already concluded that the parties did not have the necessary relationship, the Court need not further address the potential damages for the constructive fraud claim.

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV)

The BPPA is governed by California law. [Dkt. 81-1 at 18 § 17.6.] Dugdale asserts a claim for breach of implied covenant of good faith and fair dealing under the BPPA. [Dkt. 43 at 9.] Dugdale does not assert a claim for breach of implied covenant of good faith and fair dealing under the VARA, which is governed by Texas law, and Alcatel agrees that no such claim exists under Texas law, [dkt. 144 at 9 n.9].

While Dugdale may be able to pursue a breach of implied covenant of good faith and fair dealing claim under the BPPA, California law provides that although the implied covenant requires mutual fairness in applying the actual terms of a contract, it cannot substantively alter those terms and "the measure of damages for such a breach remains solely contractual." *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 327 (Cal. 2000). Therefore, even if Alcatel breached the BPPA's implied covenant of good faith and fair dealing, Dugdale's damages are still limited by the terms of the BPPA. The terms of that contract expressly limit recovery to the purchase price

of the products Dugdale can prove defective and disclaim punitive damages. [Dkt. 81-1 at 16 § 12.1(iii).]

Therefore, to the extent damages are available on a claim of this nature, Dugdale is limited by the contractual limitations of liability in the BPPA and cannot recover punitive damages.

### 5. Breach of Contract (Count VI)[6]

Alcatel cites various portions of the BPPA and the VARA and argues that Dugdale's damages for the allegedly defective products are limited to the purchase price of any product proven to be defective. [Dkt. 80 at 9.] Dugdale does not challenge Alcatel's interpretation of these provisions.

If the contract language is clear and unambiguous, the Court must interpret the contract without considering extrinsic evidence. *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753-54 (7th Cir. 2006). Interpretation of an unambiguous written contract is particularly amenable to summary judgment because where there is no contractual ambiguity, the interpretation of a contract is a matter of law. *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481 (7th Cir. 2006).

Under the BPPA, Alcatel "warrants that the Products shall be free from material manufacturing and materials defects under conditions of normal use" for a limited time. [Dkt. 81-1 at 10 § 7.1.] The BPPA provides that "Alcatel's sole liability and [Dugdale's] exclusive remedy for breach of the above warranty [is to] provide a replacement, exchange, repair, or, in the case of Software, a software maintenance release, patch or workaround to prevent such errors from

---

[6] The Court does not address Count V of Dugdale's Amended Complaint, [dkt. 43 at 10], because the Court previously granted Dugdale's declaratory judgment request and held that Alcatel cannot recover $344,552.17 for non-payment under the BPPA, [dkt. 194].

recurring." [Dkt. 81-1 at 10 § 7.1.] If Alcatel cannot repair or replace the returned product, "the price therefor paid by [Dugdale] to Alcatel for such Product will be credited and applied to future orders." [*Id.* at 11 § 7.2.] The BPPA also provides:

> IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING LOSS OF PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER ARISING, WHETHER FOR BREACH OF THIS AGREEMENT, INCLUDING BREACH OF WARRANTY OR IN TORT, EVEN IF THAT PARTY HAS BEEN PREVIOUSLY ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

[Dkt. 81-1 at 16 § 12.1(iii).]

The VARA contains similar language:

> REGARDLESS OF THE FORM OR CAUSE OF ACTION WHETHER IN CONTRACT OR TORT OR THE NUMBER OF CLAIMS, AND WHETHER IN RESPECT OF A BREACH OR DEFAULT IN THE NATURE OF A BREACH OF CONDITION OR FUNDAMENTAL TERM OR A FUNDAMENTAL BREACH: (A) NEITHER ALCATEL NOR ANY OF ALCATEL'S SUPPLIERS OR LICENSORS SHALL HAVE ANY LIABILITY TO [DUGDALE] FOR ANY ECONOMIC, CONSEQUENTIAL, INDIRECT, INCIDENTAL OR SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, ANY LOST REVENUES OR PROFITS) ARISING OUT OF THIS AGREEMENT, AND (B) ALCATEL'S LIABILITY FOR ANY CLAIM ARISING OUT OF THIS AGREEMENT (OTHER THAN LIABILITY FOR PERSONAL INJURY CLAIMS) SHALL NOT EXCEED ACTUAL, DIRECT, PROVABLE DAMAGES, NOT TO EXCEED THE PURCHASE PRICE OF THE PRODUCT THAT ARE THE SUBJECT OF SUCH CLAIM.

[Dkt. 81-2 at 8 § 19.1.]

Dugdale does not dispute that the language in the BPPA and the VARA unambiguously limits its recovery to the purchase price of the products Dugdale can show to be defective. Dugdale also does not dispute that both contracts limit Dugdale's recovery regardless of whether claims are pursued in contract or in tort. Instead, Dugdale's response is limited to its argument that the BPPA and the VARA were induced by fraud. The Court has already addressed that ar-

gument.  *See* Part III.D.2, *supra*.  Therefore, the Court concludes that pursuant to the unambiguous language in the BPPA and the VARA, Dugdale's claim for breach of contract is limited to the purchase price of the products that Dugdale can show to be defective.

Although Dugdale does not expressly request punitive damages for the alleged breach of contract, it is well settled that in Indiana there are "no exceptions to the rule that punitive damages may not be awarded in contract actions."  *Creative Demos*, 142 F.3d at 371.  Therefore, Dugdale cannot recover punitive damages on its breach of contract claim.

### 6. Negligence (Count VII)

The contractual limitations on liability in the BPPA and the VARA apply to tort claims. [Dkts. 81-1 at 16 § 12.1(iii) (BPPA provision limiting liability "however arising, whether for breach of this agreement . . . or in tort"); 81-2 at 8 § 19.1 (VARA provision limiting liability "regardless of the form or cause of action whether in contract or in tort or the number of claims . . .").]  Therefore, Dugdale's recovery on its negligence claim is limited to the purchase price of the products that Dugdale can show to be defective.

Additionally, while gross negligence can support a claim for punitive damages, *DFS Secured Healthcare Receivables*, 384 F.3d at 354, Dugdale does not allege gross negligence.  Negligence and gross negligence have the same elements (duty, breach, and injury), but the two torts are different claims that have different degrees of what constitutes a breach.  *N. Ind. Public Serv. Co. v. Sharp*, 790 N.E.2d 462, 465-66 (Ind. 2003).  Therefore, punitive damages are not available on Dugdale's negligence claim.

### E. Summary of Available Damages

To summarize, Dugdale's only remaining claim regarding representations about the Advocate System is for promissory estoppel.  Its recovery on that claim is limited to out-of-pocket

expenses. Lost profits, lost opportunity costs, and punitive damages are not recoverable on Dugdale's promissory estoppel claim.

With respect to the defective products claims, whether in contract or in tort, Dugdale's recovery is limited by the contractual provisions contained in the BPPA and the VARA that limit recovery to the purchase price of the products Dugdale can show to be defective. In other words, Dugdale's recovery for the defective products claims is capped by the clauses limiting liability in the BPPA and the VARA, regardless of the theory of recovery on which Dugdale might prevail. Lost profits and lost opportunity costs are not available under either of those contracts. Punitive damages are not available under the BPPA or on the breach of contract, implied covenant of good faith and fair dealing, or negligence claims. Although Dugdale may be able to recover punitive damages to the extent it can prove a fraud claim independent of its breach of contract claim under the VARA, an award of punitive damages under that contract would still be capped by the contractual limitation limiting recovery at the purchase price of the products, and may be subsumed by any recovery of actual damages.

Based on the Court's analysis, Dugdale is not entitled to recover lost profits or lost opportunity costs on any of its remaining claims.[7] Therefore, the Court grants Alcatel's request for summary judgment to the extent that the Court finds as a matter of law that Dugdale cannot recover lost profits or lost opportunity costs on its claims.

---

[7] Alcatel argues that Dugdale is not entitled to lost profits and lost opportunity costs because those damages are speculative. [Dkt. 80 at 12-18, 20-24.] Even if that argument has merit, the Court need not make that determination because none of Dugdale's remaining claims allow it to recover lost profits or lost opportunity costs. Therefore, the Court will not address Alcatel's argument that Dugdale improperly claims lost gross profits (as opposed to lost net profits) and fails to discount its lost profits to present day value. [Dkt. 80 at 18-20.]

### F. Prejudgment Interest

Alcatel argues that Dugdale is not entitled to prejudgment interest because its damages are not fixed and readily ascertainable. [Dkt. 80 at 24-27.] Alcatel limits its argument to Dugdale's claims for lost profits. Because the Court has already concluded that Dugdale cannot recover lost profits on its remaining claims as a matter of law, it follows that Dugdale cannot recover prejudgment interest on lost profits to which it is not entitled.

While the Court grants Alcatel's motion to the extent it seeks summary judgment regarding prejudgment interest on lost profits, the Court makes no determination regarding whether Dugdale can recover prejudgment interest on any out-of-pocket expenses recovered on the promissory estoppel claim or any amounts recovered for defective products under the BPPA and the VARA.

### IV.
#### CONCLUSION

For the reasons detailed herein, the Court **GRANTS IN PART** and **DENIES IN PART** Alcatel's Partial Motion for Summary Judgment on Damages. [Dkt. 79.] Alcatel's motion is granted to the extent that Dugdale cannot recover lost profits or lost opportunity costs on its remaining claims as a matter of law; Dugdale cannot recover prejudgment interest for lost profits or lost opportunity costs as a matter of law; and Dugdale cannot recover punitive damages for its promissory estoppel, fraud under the BPPA, breach of contract, implied covenant of good faith and fair dealing, or negligence claims as a matter of law. Alcatel's motion is denied to the extent that Dugdale can recover punitive damages for fraud under the VARA if it can prove a fraud claim independent of its breach of contract claim. Any punitive damages recoverable on that claim (along with any other damages for the defective products claims) are capped by the contractual limitations of liability contained in the VARA and may be subsumed by any recovery of

actual damages. Pursuant to the unambiguous language in the BPPA and the VARA, which Dugdale does not dispute, Dugdale's damages for breach of contract, negligence, and implied covenant of good faith and fair dealing (under the BPPA) are limited to the purchase price of the products that Dugdale can show to be defective.

06/07/2011

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Louis F. Bonacorsi
BRYAN CAVE LLP
lfbonacorsi@bryancave.com

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
jboyers@woodmclaw.com

Raegan Mackenzie Gibson
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
rgibson@beneschlaw.com

Douglas B. King
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Stephen R. Snodgrass
BRYAN CAVE LLP
srsnodgrass@bryancave.com

Mark R. Waterfill
BENESCH, FRIEDLANDER, COPLAN, & ARONOFF, LLP
mwaterfill@beneschlaw.com

Scott A. Weathers
THE WEATHERS LAW OFFICE
scott@sawlaw.net

Jamie A. Young
WOODEN & MCLAUGHLIN LLP
jyoung@woodmaclaw.com